**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

FUAD REVEIZ

        Debtor

Case No. 09-30164

CONSTRUCTION DESIGN
AND MANAGEMENT, INC.

        Plaintiff

v.

FUAD REVEIZ

        Defendant

Adv. Proc. No. 09-3170

# M E M O R A N D U M

**APPEARANCES**:    YOUNG, WILLIAMS, KIRK & STONE, P.C.
                          Katherine M. Hamilton, Esq.
                          Post Office Box 550
                          Knoxville, Tennessee  37901-0550
                          Attorneys for Plaintiff

                          HAGOOD, TARPY & COX, PLLC
                          T. Lynn Tarpy, Esq.
                          900 South Gay Street
                          Suite 2100
                          Knoxville, Tennessee  37902-1537
                          Attorneys for Defendant

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding is before the court upon Construction Design and Management, Inc.'s Complaint to Determine Dischargeability of Debt (Complaint) filed by the Plaintiff on September 11, 2009, asking the court to award it a nondischargeable judgment against the Defendant pursuant to 11 U.S.C. § 523(a)(6) (2006) in the amount of $539,700.00. The trial was held on July 19, 2010. The record before the court consists of nine exhibits introduced into evidence and the testimony of four witnesses, Denise Simmons, Mark Matlock, Lewis P. Snyder, and the Defendant.

This is a core proceeding. 28 U.S.C. § 157(b)(2)(I) (2006).

I

On November 9, 2006, the Defendant, in his capacity as "owner" of Reveiz & Gibbs, LLC, a developer, entered into a Standard Form of Agreement Between Owner and Contractor (Contractor Agreement) with the Plaintiff, a general contractor, for the construction of a condominium development in Sevier County, Tennessee, known as Wisteria Point Condominium Development (Wisteria Point Condominium Project), at a "contract sum" of $3,368,585.00. TRIAL EX. 2. Pursuant to the Contractor Agreement, Reveiz & Gibbs, LLC excavated the site, receiving a credit against the amount owed, but all remaining work and all materials were to be provided by the Plaintiff. To fund the construction of the Wisteria Point Condominium Project, Reveiz & Gibbs, LLC, the Defendant, and H. Harry Gibbs entered into a Construction Loan Agreement with Tennessee State Bank. TRIAL EX. 1. As security for the construction loan, Reveiz & Gibbs, LLC

executed a Deed of Trust, granting Tennessee State Bank a lien against real property at 224 Maggie Mack Lane, Sevierville, Tennessee. The construction loan proceeds were the primary source of payment to the Plaintiff for labor and materials, and at various times, the Plaintiff requested draws against the loan proceeds through the Defendant and Reveiz & Gibbs, LLC. *See* COLL. TRIAL EX. 4. After a draw was requested and following approval, Tennessee State Bank would deposit the requested amounts into a bank account in the name of Reveiz & Gibbs, LLC.

As it worked on construction of the project, the Plaintiff submitted eight draw requests to Reveiz & Gibbs, LLC which were promptly paid to the Plaintiff once they were funded by Tennessee State Bank. On March 13, 2008, the Plaintiff requested draw #9 in the amount of $189,982.80. After the request was funded by Tennessee State Bank, Reveiz & Gibbs, LLC paid only $49,982.00 to the Plaintiff. Following nonpayment of the entirety of the requested draw #9, Mr. Matlock, the president and owner of the Plaintiff, met with the Defendant, who acknowledged using the proceeds for other projects and made a partial payment of approximately $50,000.00 to the Plaintiff. The Plaintiff continued performance and was paid accordingly under the Contractor Agreement through the summer of 2008, when it was not paid draws #14 and #15 in the respective amounts of $373,956.30 and $107,567.10, when requested, precipitating a meeting with Tennessee State Bank concerning Reveiz & Gibbs, LLC's nonpayment.

The Defendant filed the Voluntary Petition commencing his case under Chapter 7 on January 15, 2009, and the Plaintiff filed the Complaint initiating this adversary proceeding on September 11, 2009, averring that the Defendant was under contractual and statutory obligations to use the construction loan proceeds only for that purpose and that he maliciously and willfully

3

converted $539,700.00 held by Reveiz & Gibbs, LLC in constructive trust and for the benefit of the Plaintiff, justifying a judgment in that amount and a determination of nondischargeability. The Defendant denies the Plaintiff's allegations, arguing that he did not maliciously or willfully convert funds.

## II

The Plaintiff seeks a judgment against the Defendant along with a determination that the judgment is nondischargeable under 11 U.S.C. § 523, which, as relevant to this adversary proceeding, provides that "[a] discharge under section 727, . . . does not discharge an individual debtor from any debt — (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a) (2006). Courts construe § 523(a) liberally in favor of debtors and strictly against the party seeking a determination of nondischargeability, who also bears the burden of proving the necessary elements by a preponderance of the evidence. *Grogan v. Garner*, 111 S. Ct. 654, 661 (1991); *Rembert v. AT&T Universal Card Services, Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998). Additionally, the bankruptcy court possesses both the jurisdiction and the authority not only to adjudicate the Plaintiff's claims but to award any necessary damages as measured by state law. *See Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 759 (Bankr. E.D. Tenn. 2003) (citing *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 965 (6th Cir. 1993)).

In order to be successful under § 523(a)(6), the Plaintiff must prove the existence of "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury[,]" *Kawaauhau v. Geiger*, 118 S. Ct. 974, 977 (1998), and that the Defendant either desired to cause the

consequences of his actions or believed with reasonable certainty that such consequences would occur. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999). "That a reasonable debtor 'should have known' that his conduct risked injury to others is simply insufficient. Instead, the debtor must 'will or desire harm, or believe injury is substantially certain to occur as a result of his behavior.'" *Guthrie v. Kokenge (In re Kokenge)*, 279 B.R. 541, 543 (Bankr. E.D. Tenn. 2002) (quoting *Markowitz*, 190 F.3d at 465 n.10). Additionally, "the injury must invade the creditor's legal rights." *Steiner v. Best (In re Best)*, 109 Fed. Appx. 1, 6 (6th Cir. 2004). Accordingly, based upon Sixth Circuit authority, "unless the actor desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it, he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *Markowitz*, 190 F.3d at 464; *Kokenge*, 279 B.R. at 543 (citations omitted).

"Although the 'willful' and 'malicious' requirements will be found concurrently in most cases, the terms are distinct, and both requirements must be met under § 523(a)(6)." *South Atlanta Neurology & Pain Clinic, P.C. v. Lupo (In re Lupo)*, 353 B.R. 534, 550 (Bankr. N.D. Ohio 2006). "An act will be deemed 'willful' only if it was undertaken with the actual intent to cause injury," *Cash America Financial Services v. Fox (In re Fox)*, 370 B.R. 104, 119 (B.A.P. 6th Cir. 2007), requiring the court to "look into the debtor's mind subjectively" in order to determine whether the debtor intended to cause the consequences of his act or believed that the consequences were substantially certain to result from his act[.]" *Monsanto Company v. Wood (In re Wood)*, 309 B.R. 745, 753 (Bankr. W.D. Tenn. 2004). On the other hand, "[a]n act is 'malicious' if it is undertaken 'in conscious disregard of one's duties or without just cause or excuse' . . . [and does] 'not require

5

ill-will or specific intent to do harm.'" *Fox*, 370 B.R. at 119 (quoting *Wheeler v. Laundani*, 783 F.2d 610, 615 (6th Cir. 1986)). "The conduct 'must be more culpable than that which is in reckless disregard of creditors' economic interests and expectancies, as distinguished from . . . legal rights. [K]nowledge that legal rights are being violated is insufficient to establish malice . . . .'" *Best*, 109 Fed. Appx. at 6 (quoting *In re Mulder*, 306 B.R. 265, 270 (Bankr. N.D. Iowa 2004)). In other words, "[l]ack of excuse or justification for the debtor's actions will not alone make a debt nondischargeable under § 523(a)(6)." *Lupo*, 353 B.R. at 550. Nondischargeability under § 523(a)(6) requires proof that the Plaintiff was injured and the Defendant's deliberate or intentional actions caused its injury, but "[m]ere negligence is not sufficient to except a debt from discharge under § 523(a)(6)." *Fox*, 370 B.R. at 119.

Acts of conversion may serve the basis for a determination of nondischargeability under § 523(a)(6). Under Tennessee law, conversion "is the appropriation of tangible property to a party's own use and benefit in exclusion of defiance of the owner's rights." *Thompson v. Thompson*, 2009 Tenn. App. LEXIS 99, at *45, 2009 WL 637289, at *14 (Tenn. Ct. App. Mar. 12, 2009); *see also Mammoth Cave Prod. Credit Ass'n v. Oldham*, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977) (defining conversion as an intentional tort requiring proof that a party appropriated another's property for his own use by exercising dominion and control in exclusion or defiance of the owner's right to use and benefit from the property). "The main focus of the tort is the interference with an owner's property right[ and t]he degree of this interference, as well as the impact on the property, determines whether there has been a conversion." *Gen. Elec. Credit Corp. v. Kelly & Dearing Aviation*, 765 S.W.2d 750, 753 (Tenn. Ct. App. 1988). "[W]hile they do appreciably overlap,

liability for conversion does not automatically equate with the existence of a nondischargeable debt under § 523(a)(6)." *Superior Metal Prods. v. Martin (In re Martin)*, 321 B.R. 437, 441 (Bankr. N.D. Ohio 2004). Whether an act of conversion constitutes a willful and malicious injury within the scope of § 523(a)(6) depends upon whether the party intended to cause the harm or was substantially certain that such harm would occur. *Sweeney v. Lombardi (In re Lombardi)*, 263 B.R. 848, 853 (Bankr. S.D. Ohio 2001).

The Defendant does not dispute that Reveiz & Gibbs, LLC obtained a construction loan from Tennessee State Bank in order to fund the Wisteria Point Condominium Project or that the Plaintiff had performed the work on the project designated in draw request #9 made on March 13, 2008, in draw request #14 made on August 1, 2008, and in draw request #15 made on August 24, 2008. The Defendant likewise does not dispute that construction loan proceeds were paid from Reveiz & Gibbs, LLC to Reveiz Homes, LLC and used for purposes other than payment to the Plaintiff and/or work performed on the Wisteria Point Condominium Project. He does, however, dispute the Plaintiff's averments that he was not entitled to a $55,638.02 developer fee and that Mr. Matlock was not aware that funds were being paid to Reveiz Homes, LLC to help pay for other projects, including projects in which Mr. Matlock was involved as well, with the understanding that the Plaintiff would be paid all monies it was due upon the closing of another project.

In prosecuting this adversary proceeding, the Plaintiff's primary argument has been that the construction loan proceeds were, in actuality, property of the Plaintiff, held in a constructive trust, and that the Defendant's use of those proceeds for other purposes than payment to the Plaintiff constituted conversion. Unquestionably, under the terms of the Construction Loan Agreement with

7

Tennessee State Bank, Reveiz & Gibbs, LLC was required to open a "Construction/Building Checking Account" into which funds from the loan would be deposited by the bank following submission and approval of draw requests and that Reveiz & Gibbs, LLC was to "use this account solely for deposit and disbursement of funds associated with this construction project." TRIAL EX. 1 at ¶ 1.4; *see also* ¶¶ 1.8, 5.3. The Construction Loan Agreement additionally states that, at Tennessee State Bank's option, it was authorized to make disbursements and advances directly to the general contractor, subcontractors, mechanics, laborers, etc. into an appropriately designated special bank account, with any payments or disbursements charged against Reveiz & Gibbs, LLC's loan account. TRIAL EX. 1 at ¶¶ 1.5, 1.6. The Plaintiff was not, however, a party to the Construction Loan Agreement and is not referenced anywhere within that document, nor does either the Construction Loan Agreement or the Contractor Agreement between the Plaintiff and Reveiz & Gibbs, LLC provide that the loan proceeds are to be held "in trust" for the Plaintiff's benefit. Similarly, while the Construction Loan Agreement grants Tennessee State Bank a security interest in the real property upon which the Wisteria Point Condominium Project was to be built, no security interest of any kind was granted to the Plaintiff by either the Construction Loan Agreement or the Contractor Agreement. In reality, the Plaintiff was merely an unsecured creditor of Reveiz & Gibbs, LLC pursuant to the breach of the Contractor Agreement. The Sixth Circuit has, however, held that "a breach of contract cannot constitute the willful and malicious injury required to trigger § 523(a)(6)." *Best*, 109 Fed. Appx. at 8 (citing *In re Bullock-Williams*, 220 B.R. 345, 347 (B.A.P. 6th Cir. 1998)).

Moreover, the Plaintiff has not sufficiently proved that the Defendant's actions rise to the level of "willful and malicious" as required by § 523(a)(6). To the contrary, the Defendant testified that in 2008, he held at least a minority interest in approximately ten development projects but that none of them was successful due to economic hardships. Upon running into financial difficulties in 2008, the Defendant testified that he asked Mr. Matlock if he could borrow a portion of the proceeds from draw #9 before doing so, that Mr. Matlock agreed that he could, and that he always intended to make complete payment to the Plaintiff for the work it had performed on the Wisteria Point Condominium Project. Even though Mr. Matlock disputed the Defendant's testimony that he knew the Defendant was using the money before transferring it to Reveiz Homes, LLC, Mr. Matlock did not dispute that he was aware soon after Tennessee State Bank disbursed draw #9 that Reveiz & Gibbs, LLC had not paid the entire draw amount and that a portion had been used for other purposes. At trial, Mr. Matlock acknowledged that he did not contact Tennessee State Bank after draw #9. It was only after the Plaintiff did not receive payment on draws #14 and #15 for July and August that Mr. Matlock set up a meeting with bank officials concerning nonpayment of the draw requests, for which he prepared Trial Exhibit 8 to show the amounts he had determined were paid by Reveiz & Gibbs, LLC to Reveiz Homes, LLC which were not related to the Wisteria Point Condominium Project and/or were not approved by him, his staff, or the bank. Mr. Matlock also testified that he was unaware of the Defendant's financial problems but that he believed, following draw #9, that the Defendant would pay the Plaintiff and relied upon the Defendant's promises based upon the long-standing personal and business relationship between the two men and because the Plaintiff had been routinely paid for its work prior to that time.

In summary, the Plaintiff has not proved by a preponderance of the evidence that it is entitled to a nondischargeable judgment against the Defendant for willful and malicious injury.[1]  A judgment consistent with this Memorandum will be entered.

FILED:  September 9, 2010

                                BY THE COURT

                                */s/ RICHARD STAIR, JR.*

                                RICHARD STAIR, JR.
                                UNITED STATES BANKRUPTCY JUDGE

---

[1] Because the court finds that any judgment granted to the Plaintiff against the Defendant is dischargeable, it has not addressed the appropriate amount of any such judgment.